UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSS SHANE IVY,<br><br>    Petitioner,<br>v.<br><br>MATTHEW CATE, Secretary, Department of Corrections,<br><br>    Respondent. | Civil Case No.: 12cv00249 AJB (DHB)<br><br>ORDER:<br><br>1) ADOPTING THE REPORT AND RECOMMENDATION, (Doc. No. 27);<br><br>(2) DENYING PETITIONER'S OBJECTIONS, (Doc. No. 30);<br><br>(3) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (Doc. No. 1); AND<br><br>(4) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |

  On January 30, 2012, Petitioner Ross Shane Ivy ("Petitioner"), a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) The Petition challenged Petitioner's state court conviction of second degree murder with use of a deadly or dangerous weapon, wherein Petitioner was sentenced to 16 years to life. (*Id.* at 1.) On March 19, 2013, Magistrate Judge David H. Bartick issued a report and recommendation ("R&R"), recommending that the Court deny the Petition. (Doc. No. 27.) Petitioner filed timely objections to the R&R on April 18, 2013. (Doc. No. 30.) For the reasons set forth below, the Court ADOPTS the R&R, (Doc. No. 27), OVERRULES Petitioner's Objections, (Doc. No. 30), DENIES the Petition, (Doc. No. 1), and DECLINES to issue a Certificate of Appealability.

# BACKGROUND

## I.  Factual Background

On July 24, 2009, after a trial lasting approximately two weeks, a jury convicted Petitioner of second degree murder with the use of a deadly or dangerous weapon. (Lodgment No. 1, Vol. 2.)  The following facts come from the unpublished California Court of Appeal opinion, which summarized the evidence presented at Petitioner's trial in San Diego Superior Court, Case No. SCD 213535.[1]

### A. *The prosecution's evidence*

On April 14, 2008, at approximately 11:45 p.m., the victim, Gregarry Willis, was seated in his wheelchair in the 800 block of F Street in San Diego.  Willis had lost the lower part of his left leg in an accident when he was a child.  As Ivy walked by Willis, Willis asked Ivy for some change.  Ivy responded that he did not have any change.  As Ivy passed by, Willis said, "Well, fuck you, faggot."

Ivy turned around, threw something at Willis, punched Willis in the face, and told Willis that he was going to kill him.  Willis stood up from his wheelchair, holding a metal crutch.  Ivy grabbed Willis's crutch and began to strike Willis in the head with it.  After Ivy struck Willis in the head numerous times with the crutch, Willis fell to the ground in an apparent state of unconsciousness.  While Willis lay on the ground, Ivy struck Willis in the head again with the crutch.  Several bystanders intervened, urging Ivy to stop the attack.  Ivy ran from the scene.

When police arrived, they found Willis lying on the ground.  Willis appeared to be severely injured, and was bleeding from various parts of his head.  The officers found the crutch that Ivy had used in the attack.  The crutch was bent and was missing its handle.  Paramedics transported Willis to a local hospital.

Willis was pronounced dead at the hospital approximately an hour after the attack.  He had suffered severe blunt force trauma injuries to his head.  Toxicology tests revealed that Willis had cocaine and alcohol in his blood at the time of the attack.  The medical examiner, Dr. Steven Campman, was of the opinion that Willis died from a cardiac arrest caused by blunt force trauma, cocaine and alcohol, and a preexisting heart condition.

### B. *The defense*

#### 1. *The charged offense*

---

[1] The Court presumes the state court's factual determinations to be correct absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Eyewitness Sylvia Ward testified that Willis started a fistfight with Ivy, and that Willis hit Ivy lightly with his crutch during the altercation. According to Ward, after Willis hit Ivy with his crutch, Ivy grabbed the crutch from Willis and used it to strike Willis several times in the face, including once while Willis was on the ground.

Ivy testified in his own defense. Ivy stated that the confrontation began when he was walking by Willis and Willis asked him for some change. When Ivy did not respond, Willis called Ivy a "faggot." Ivy said that he tossed a bible to Willis, and Willis responded, "I am going to fucking kill you." As Ivy turned to walk away, he felt Willis punch him in the back and side of the head. Ivy and Willis then struggled briefly, and Willis fell over. Willis stood up and struck Ivy in the head with a crutch. As Willis attempted to strike Ivy again, Ivy grabbed the crutch and struck Willis in the face about four times with it. Willis fell backward and struck his head on the concrete. Ivy maintained that he did not hit Willis in the head while Willis was on the ground. After Willis fell and struck his head on the concrete, Ivy threw the crutch down and left the scene.

Dr. Harry Bonnell, the defense medical expert, testified that in his opinion, Willis died of a heart attack caused by heart disease and Willis's recent use of cocaine and alcohol. Dr. Bonnell testified that blunt force trauma was not the cause of Willis's death. Dr. Bonnell believed that Willis suffered a heart attack during the altercation, which caused him to fall to the ground.

Lisa Dimeo, a forensic specialist, testified that there was a lack of blood spatter at the scene of the attack. Dimeo testified that the lack of blood spatter suggested that Ivy had not struck Willis with the crutch at a time when there was blood on Willis's face.

2.   *Other incidents*

The defense presented evidence that in 2007, Willis had been involved in another altercation in which Willis had yelled insults at a passing pedestrian. Willis chased the pedestrian for a distance as the pedestrian attempted to leave the area.

Ivy acknowledged that he had been involved in an altercation at a homeless shelter with a man named Juan Pena. Ivy claimed that Pena had tried to punch him, and that he had responded by punching Pena.

C.   *Rebuttal*

Juan Pena testified that Ivy assaulted him during a fight in a shelter in July 2006.

(Lodgment No. 6 at 3-6.)

## II.   Procedural Background

On May 6, 2010, Petitioner appealed his conviction to the California Court of Appeal arguing six grounds for relief. (Lodgment No. 6.) Three of Petitioner's argu-

1 ments for relief alleged jury instruction errors, one alleged insufficient evidence to
2 support the underlying conviction, one alleged that the trial court inappropriately
3 admitted photographic evidence at trial, and Petitioner's final argument alleged ineffec-
4 tive assistance of counsel. (*Id.*) On February 2, 2011, the California Court of Appeal
5 affirmed Petitioner's conviction in a reasoned decision. (*Id.*) On February 24, 2011,
6 Petitioner filed a petition for review in the California Supreme Court. (Lodgment No. 7.)
7 Petitioner's appeal to the California Supreme Court argued relief was warranted based on
8 jury instruction errors and insufficiency of the evidence, but did not assert relief based on
9 ineffective assistance of counsel. (*Id.*) The California Supreme Court summarily denied
10 the petition for review on April 13, 2011. (Lodgment No. 8.)

11       On September 7, 2011, Petitioner sought habeas relief in San Diego Superior
12 Court. (Lodgment No. 9.) Petitioner alleged that: (1) the trial court failed to instruct the
13 jury that it must find that the victim's death was a foreseeable result of Petitioner's act in
14 order to convict Petitioner of second degree murder; (2) there was insufficient evidence
15 to support his conviction of second degree murder; and (3) his trial and appellate counsel
16 were ineffective. (*Id.*) On November 10, 2011, the San Diego Superior Court denied the
17 petition in a reasoned decision. (Lodgment No. 10.) The Superior Court stated that
18 because Petitioner's sufficiency of the evidence, erroneous jury instruction, and ineffec-
19 tive assistance of counsel claims had each been rejected on direct appeal, and Petitioner
20 had failed to provide special circumstances warranting further review of these issues,
21 Petitioner's state habeas petition did not warrant relief. (*Id.* at 3-4.) After the Superior
22 Court rejected Petitioner's state habeas petition, Petitioner pursued no further collateral
23 relief in state court.

24       Petitioner filed the instant petition on January 30, 2012. (Doc. No. 1.) The
25 Petition asserts three grounds for relief: (1) the trial court failed to "fully interpret" the
26 causation instruction and therefore did not explain to the jury the meaning of the phrases
27 "reasonably foreseeable" or "if nothing unusual intervenes," (*Id.* at 6); (2) there was
28

insufficient evidence to support Petitioner's conviction for second degree murder, (*Id.* at 7); and (3) Petitioner's trial and appellate counsel were ineffective, (*Id.* at 8).

## LEGAL STANDARDS

### I. Review of the Report and Recommendation

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district judge's duties in connection with a magistrate judge's report and recommendation. The district judge must "make a *de novo* determination of those portions of the report to which objection is made," and "may accept, reject, or modify, in whole or in part, the finding or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). However, in the absence of timely objection(s), the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Committee Notes (1983); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

### II. Standard of Review for Federal Habeas Corpus Relief

A petitioner in state custody pursuant to the judgment of a state court may challenge his detention only on the grounds that his custody is in violation of the United States Constitution or the laws of the United States. 28 U.S.C. § 2254(a). The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, codified as amended 28 U.S.C. § 2254(d), applies to § 2254 habeas corpus petitions filed after 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Pursuant to the AEDPA, when a petitioner does not challenge a state court's determination of the evidence, a § 2254 habeas corpus petition must not be granted with respect to any claim adjudicated on the merits by a state court, unless the adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

To determine what constitutes "clearly established federal law" under 28 U.S.C. § 2254(d)(1), courts look to Supreme Court holdings existing at the time of the state court decision. *Lockyear v. Andrade*, 538 U.S. 63, 71-72 (2003). A state court decision is contrary to clearly established federal law when the court applies a rule that contradicts the governing law set forth in United States Supreme Court cases. *Id*. at 73 (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court decision is also contrary to clearly established federal law when the court confronts a set of facts that are materially indistinguishable from a United States Supreme Court decision but reaches a result different from that Supreme Court decision. *Id.* A state court decision involves an unreasonable application of clearly established federal law when it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (quoting *Williams*, 529 U.S. at 407-08) (internal quotation marks omitted). To be an unreasonable application of federal law the state court decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Lockyear*, 538 U.S. at 75.

When there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision. *See Y1st v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). When the state court does not supply reasoning for its decision, an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## DISCUSSION

### I. Petitioner's Objections to the R&R's Factual and Procedural History

Petitioner objects to both the factual and procedural history detailed in the R&R. Petitioner objects to the factual background on the basis that the R&R relied on the California Court of Appeal's erroneous recitation of the record regarding Dr. Campman's testimony. Although at first blush this objection appears to have some merit, both the R&R and the California Court of Appeal considered the entire record before issuing a

final decision.  Therefore, because the R&R correctly analyzed each of Petitioner's claims in light of the relevant facts, including the fact that Dr. Campman testified that the victim died from "cardiac arrest *during* altercation with blunt force trauma," and not "cardiac arrest *caused by* blunt force trauma," Petitioner's objection to the factual background detailed in the R&R is OVERRULED.  (R&R at 21:10-13) (emphasis in original).

Second, Petitioner objects to the R&R's recitation of the procedural history on the basis that the R&R omitted facts pertaining to Petitioner's preliminary hearing, wherein the trial judge "showed reasonable doubt that [the] offense of murder was committed." (Doc. No. 30 at 4:1-5.)  This argument is also without merit.  Although the R&R should include all relevant facts necessary to a determination of the legal issues, the R&R need not include all of the facts and circumstances leading up to, and following, a petitioner's conviction.  This is especially true in this case, wherein the details relating to Petitioner's preliminary hearing only bear on whether there was sufficient probable cause to believe an offense had been committed, not whether there was proof beyond a reasonable doubt that Petitioner in fact had committed the charged offense.  *See* Cal. Penal Code §§ 866(b), 872(a).  Accordingly, Petitioner's objections to the R&R's recitation of the procedural history are also OVERRULED.

**II.    Petitioner's Objections to the R&R's Substantive Grounds for Dismissal**

Petitioner's substantive objections to the R&R essentially repeat the same arguments already presented before Magistrate Judge Bartick and considered in the R&R: (1) the trial court did not properly instruct the jury; (2) the evidence was insufficient to support Petitioner's conviction; and (3) Petitioner's trial and appellate counsel were ineffective.

**A.    Objections Based on Instructional Error**

Petitioner's instructional error argument is two-fold: (1) Petitioner contends the trial court failed to properly instruct the jury on causation; and (2) Petitioner argues the jury instruction regarding the implied malice requirement was constitutionally deficient.

### 1. Causation

First, Petitioner contends the trial court erred in failing to instruct the jury that the victim's death had to be a "reasonably foreseeable" consequence of Petitioner's act. Petitioner contends this was a constitutional violation because it allowed the jury to convict Petitioner of second degree murder without proof of causation beyond a reasonable doubt. (Doc. No. 30 at 8:24-26.) To support his contentions, Petitioner argues the trial court erred by failing to explain how to apply the "if nothing unusual intervenes" language of CALCRIM No. 520 to the jury, and committed a constitutional error by failing to give an example of "an unusual intervening cause of death." (Doc. No. 30 at 7:16-18.) Therefore, Petitioner contends causation was not proved beyond a reasonable doubt because the victim's underlying heart condition, and alcohol and cocaine toxicity levels, were not considered by the jury because they were instructed that the victim's condition was not a defense to the charge of murder. (Doc. No. 30 at 12:1-22.)

As the R&R correctly notes, challenges to jury instructions normally present issues of state law and do not present questions cognizable on federal habeas review. However, an erroneous jury instruction can sometimes be found unconstitutional in and of itself. For example, "[t]he Due Process Clause of the Fourteenth Amendment prohibits the States from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin*, 471 U.S. 307, 313 (1985) (citations omitted). However, "absent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with such unfairness as to make the resulting conviction a denial of due process.' " *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974).

In order to determine if a jury instruction violated the Fourteenth Amendment, reviewing courts must consider a challenged jury instruction "in the context of the instructions as a whole and the trial record," and may not judge the instruction "in

artificial isolation." *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "The relevant inquiry is 'whether there is a reasonable likelihood that the jury has applied the [ailing] instruction' in an unconstitutional manner." *Spivey v. Rocha*, 194 F.3d 971, 976 (9th Cir. 1999) (quoting *Estelle*, 502 U.S. at 72).

In the present case, the jury was instructed using CALCRIM No. 520, which defined "natural and probable consequence" as "one that a reasonable person would know is likely to happen if nothing unusual intervenes." As stated by the California Court of Appeal in *People v. Fiu*, a "natural and probable consequence" is synonymous with "reasonably foreseeable," and properly instructs the jury on causation. 165 Cal. App. 4th 360, 372 (Cal. Ct. App. 2008) (finding jury instructions containing language referring to a "direct, natural and probable consequence" correctly states the law and does not have to be amplified, even upon request, with "reasonable foreseeable" language). Therefore, because state court determinations on state law issues bind federal reviewing courts, the Court agrees with the R&R, and the California Court of Appeal, which both rejected Petitioner's contentions that CALCRIM No. 520 allowed the jury to convict Petitioner of second degree murder without proof of causation beyond a reasonable doubt. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Furthermore, the Court finds the trial court did not commit constitutional error by failing to give the jury an example of an unusual intervening cause. "Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). Here, Petitioner fails to show how the challenged jury instruction did not fairly and adequately address the causation requirement, incorrectly stated the law on causation, or how the instruction could have possibly misled the jury in light of the evidence presented at trial. Therefore, because the jury heard evidence regarding the victim's underlying heart condition and alcohol and cocaine toxicity levels, the reports of both medical experts regarding the factors that contributed to the victim's death, and the

testimony of percipient witnesses, there was sufficient evidence in the record from which the jury could have applied the jury instruction at issue.  Accordingly, the Court will not second guess the jurors' final determinations of the facts presented at trial.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Petitioner also challenges jury instruction CALCRIM No. 620, which instructed the jury that:

> Greggary Willis may have suffered from an illness or physical condition that made him more likely to die from the injury than the average person.  The fact that Greggary Willis may have been more physically vulnerable is not a defense to murder.  If the defendant's act was a substantial factor causing death, then the defendant is legally responsible for the death.  This is true if Greggary Willis would have died in a short time as a result of other causes or if another person of average health would not have died as a result of the defendant's actions. [¶]. If you have a reasonable doubt whether the defendant's act caused the death, you must find him not guilty.

(Doc. No. 20-2 at 27.)

Petitioner argues that this instruction, given when there is evidence of multiple causes of death, lessened the prosecutor's burden of proof by instructing the jury that "an element of the offense has [already] been proven."  (Doc. No. 30 at 13:9-12.)  However, as stated in the R&R, insofar as CALCRIM No. 620 augmented the guidance given to the jury regarding whether the prosecution had proved second degree murder as defined in CALCRIM No. 520, the inclusion of CALCRIM No. 620 in the jury instructions is contrary to Petitioner's objections.  The instruction in CALCRIM No. 620 merely clarified that under California law, a perpetrator is not entitled to reduced culpability when, unbeknownst to him, the victim happens to have an underlying condition that contributes to the victim's death.  More importantly, however, CALCRIM No. 620 also informs the jury that they must find the defendant not guilty if they have a reasonable doubt as to whether the defendant's act caused the victim's death.  Accordingly, because this Court may not revisit state court determinations on state law issues, and will not second guess jury determinations based on sufficient facts, the Court OVERRULES Petitioner's objections based on jury instructions relating to causation, and DENIES Petitioner's claim for relief on this ground.

### 2.     Implied Malice

Second, Petitioner contends that the trial court improperly instructed the jury on what is required to satisfy the implied malice requirement under CALCRIM No. 520. Petitioner argues that based on his trial testimony, which stated that he did not know that his act was dangerous to human life, or that the victim suffered from heart disease and had alcohol and cocaine in his system at the time of the incident, Petitioner could not have appreciated the risk involved in his actions at the time he struck the victim with the crutch. Therefore, Petitioner argues that the jury could not have possibly found that he acted with implied malice.

On this exact argument, the California Court of Appeal found no deficiency, and reasoned that CALCRIM No. 520 correctly instructed the jury that there are two kinds of malice aforethought—express malice and implied malice—and that either is sufficient to establish the state of mind required for a second degree. (Lodgment No. 6 at 18-21.) This is further supported by the questions asked by the jury during deliberations and the trial court's responses. For example, when the jury asked the court whether implied malice was based on an objective or subjective standard, the trial court responded, "Implied malice requires that Ross Ivy actually knew his act was dangerous to human life." (Lodgment 1 Vol. 2 at 50.) Therefore, as discussed in further detail below, because there was ample testimony in the record from percipient witnesses regarding the altercation between Petitioner and the victim, the Court finds Petitioner's contention that CALCRIM No. 520 relieved the state of its burden of proof without merit. Accordingly, the Court OVERRULES Petitioner's objections based on jury instructions relating to implied malice, and DENIES Petitioner's claim for relief on this ground.

### B.     Objections Based on Insufficiency of the Evidence

Petitioner's second ground for relief asserts that "the evidence was insufficient as a matter of law" to convict Petitioner of second degree murder. (Doc. No. 1 at 7.) The R&R recommended dismissal of this claim, in conformance with the California Court of Appeal, finding that there was substantial evidence in the record from which the jury

could have found the necessary elements under the offense charged. (Doc. No. 27 at 19-26.) Petitioner objects to the R&R on the basis that the evidence presented at trial was insufficient to support a finding that his act caused the victim's death. (Doc. No. 30 at 15:3-9.)

A habeas petitioner challenging a state criminal conviction based on insufficiency of the evidence is entitled to relief "if it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324. The critical inquiry is whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt when the evidence is viewed in the light most favorable to the prosecution. *Id.* at 318-19. If the record contains facts that support conflicting inferences, the reviewing court must presume that the trier of fact resolved any conflicts in favor of the prosecution, and defer to that determination. *Id.* at 326. Under the AEDPA, courts apply the *Jackson* standard with an additional layer of deference. *Shakir v. Lewis*, No. 11-55009, 2013 WL 1288072, at *1 (9th Cir. Apr. 1, 2013). Thus, when the last state court to consider a petitioner's claim denies it without explanation, a petitioner is entitled to relief only if "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011); *see also Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (explaining that a federal habeas petitioner's *Jackson* claim is subject to doubly deferential review under AEDPA).

In evaluating a sufficiency of the evidence claim, a reviewing federal court must look to the applicable state law defining the substantive elements of the crime. *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) ("The *Jackson* standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.' ") (citing *Jackson*, 443 U.S. at 324 n.16). Under California law, "[s]econd degree murder is the unlawful killing of a human being with malice, but without the additional elements (i.e., willfulness, premeditation, and deliberation) that would support a conviction of first degree murder." *People v. Chun*, 45 Cal. 4th 1172,

1182 (Cal. 2009). As stated above, malice can either be express or implied. *People v. Nieto Benitez*, 4 Cal. 4th 91, 102 (Cal. 1992). Malice is implied "when a person, knowing that his conduct endangers the life of another, nonetheless acts deliberately with conscious disregard for life." *People v. Watson*, 30 Cal. 3d 290, 296 (Cal. 1981). ("[I]mplied malice contemplates a subjective awareness of a higher degree of risk than does gross negligence, and involves an element of wantonness which is absent in gross negligence."). A defendant may be found guilty of murder only if the defendant's act was the legal cause of the victim's death. *People v. Scola*, 56 Cal. App. 3d 723, 726 (Cal. Ct. App. 1976). The prosecution need not disprove possible theories of causation raised by the defense; its burden is met if it produces evidence from which it may be reasonably inferred that the defendant's act was a substantial factor in producing the outcome. *Id.*

Here, Petitioner was convicted of second degree murder. In support of the finding that sufficient evidence supported Petitioner's conviction of second degree murder, both the California Court of Appeal and the R&R relied on the eyewitness testimony of Clinton Mink ("Mink") and Jessie Perez ("Perez"), and the medical report and trial testimony of Dr. Campman, the doctor who performed the victim's autopsy. Petitioner objects to the R&R's reliance on the eyewitness testimony of Mink and Perez, contending that it conflicts with the trial testimony of Sylvia Ward ("Ward"), a bystander who Petitioner claims was closer to Petitioner and the victim during the altercation. (Doc. No. 30 at 17:6-10.) Upon a review of the record, however, the Court finds this objection without merit. The trial testimony of all three eyewitnesses—Mink, Perez, and Ward—are substantially similar. Each eyewitness indicated that Petitioner used the crutch in the manner of an "ax" blow or a "baseball" bat swing, and struck or kicked the victim hard in the head after the victim had fallen to the ground. (Lodgment No. 2, Vol. 1, Part 2 at 109:3-6; Lodgment No. 2, Vol. 3 at 34:22-25; Lodgment No. 2, Vol. 4 at 69-70; Lodgment No. 2, Vol. 5 at 47:16-22, 48:6-7, 77:1-8.) Moreover, as noted in the R&R, Petitioner's own testimony conflicted in material respects with the eyewitnesses'

accounts, which likely affected Petitioner's credibility before the jury. As a result, after viewing the record in the light most favorable to the judgment, the Court finds there was ample evidence in the record from which the jury could have concluded that "Petitioner committed an act, the natural consequences of which were dangerous to life, that Petitioner knew his conduct endangered the life of another, and acted with a conscious disregard for life." (Lodgment No. 6, Doc. No. 20-20 at 10.)

Petitioner also contends that there was insufficient evidence to support his conviction because Dr. Campman testified at trial that the victim's brain injuries alone were not sufficient to cause the victim's death. Similar to Petitioner's other contentions, this contention is also without merit. Second degree murder does not require that the defendant's act be the sole cause of the victim's death. As a result, this Court concurs with the finding of the California Court of Appeal, which found that "the jury could reasonably have found that Willis died of a heart attack that was caused by a combination of factors, including blunt force head trauma, Willis' recent use of cocaine and alcohol, and Willis' preexisting heart disease." (Lodgment No. 6 at 10-11 & n. 7.) Therefore, in light of the eyewitness testimony, the testimony of Dr. Campman, and Petitioner's conflicting trial testimony, the Court OVERRULES Petitioner's insufficiently of the evidence objections, and DENIES Petitioner's claim for relief on this ground.

### C. Objections Based on Ineffective Assistance of Counsel

Petitioner's final ground for relief asserts ineffective assistance of counsel based on his trial counsel's failure to challenge the jury instructions, and his appellate counsel's failure to assert an ineffective assistance of counsel argument on direct appeal before the California Supreme Court. (Doc. No. 30 at 25:18-27.) As the R&R correctly notes, and Petitioner concedes, Petitioner's ineffective assistance of counsel claim is both unexhausted and procedurally barred. (Doc. No. 30 at 26:20-21.) However, even if the Court were to reach the merits of Petitioner's ineffective assistance of counsel claim, the claim would fail.

A petitioner claiming ineffective assistance of counsel must show both: (1) deficient performance under an objective standard of reasonableness; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To demonstrate prejudice, the petitioner must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different." *Id.* at 694. The question on federal habeas review of an ineffective assistance of counsel claim is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard," not whether counsel's actions were unreasonable." *Harrington*, 131 S. Ct. at 788.

As discussed above, the Court finds the jury was properly instructed under California law as to each element required to support a conviction for second degree murder, and substantial evidence supports Petitioner's conviction. Therefore, although Petitioner contends that the jury should have been instructed on a "lesser included offense of murder," the Court finds this argument without merit, as the jury was instructed not only as to second degree murder, but also on the lesser included offenses of voluntary manslaughter, involuntary manslaughter, justifiable homicide, self-defense, and provocation. (Lodgment No. 2, Vol. 8 at 5-30.) Thus, the Court finds Petitioner's ineffective assistance of counsel claim regarding his appellate counsel cannot stand because "failure to raise issues on direct appeal does not constitute ineffective assistance [of counsel] when appeal would not have provided grounds for reversal." *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2011). Accordingly, because Petitioner has failed to satisfy either prong of the *Strickland* test, the Court OVERRULES Petitioner's objections and DENIES Petitioner's claim for relief on this ground.

## II. Certificate of Appealability

Under the AEDPA, a state prisoner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability from the district court judge or a

1  circuit judge. 28 U.S.C. § 2253(c)(1)(A). A court may issue a certificate of appealability
2  only if the applicant has made "a substantial showing of the denial of a constitutional
3  right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when a district court has rejected
4  the constitutional claims on the merits, the petitioner must show that "reasonable jurists
5  would find the district court's assessment of the constitutional claims debatable or
6  wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In the present case, the Court
7  concludes that Petitioner has not made a substantial showing of the denial of a constitu-
8  tional right. Accordingly, the Court DECLINES to issue a certificate of appealability.

## CONCLUSION

10  For the reasons set forth above, the Court ADOPTS the R&R in full, (Doc. No.
11  27), OVERRULES Petitioner's objections, (Doc. No. 30), DISMISSES the Petition,
12  (Doc. No. 1), and DECLINES to issue a Certificate of Appealability. The Clerk of Court
13  is instructed to enter judgment and close the case.

15  IT IS SO ORDERED.

17  DATED: October 17, 2013

Hon. Anthony J. Battaglia
U.S. District Judge